No. 77.—FEW GORDON, plaintiff in error, *vs.* RICE B. GREEN and WIFE, defendants.

[1.] A remainder in personalty cannot be created by parol, but a remainder of personalty in trust may be proven by a declaration of the trust in writing, made by the trustee, setting forth the nature and objects of the trust clearly and distinctly.

[2.] The answer to a bill in Chancery, filed by the party making a remainder by parol in trust, against the trustee, which clearly admits the nature and objects of the trust: *Held* to be admissible to sustain the remainder in an action by the *cestui que trust,* against the trustee, for the trust fund.

[3.] It was agreed between A and B, that if B would undertake the management of A's affairs, and collect in certain funds due to her, that "B should retain, out of the first money received on her account, the amount of $1000, five hundred of which was to be his then, and the remaining five hundred he was to retain and use as his own, but at her death was to

Gordon *vs.* Green and wife.

pay over to C the amount of the five hundred dollars, without interest:" *Held*, that this agreement created a gift to B in trust for the use of C, to be paid to C at the death of A, without accountability for interest.

[4.] *Held*, that the gift was perfected so soon as the fund was collected by B, and was then irrevocable.

[5.] A trust of personalty may be created and proven by parol.

[6.] No particular form of words is necessary to create a trust. It will be sufficient if the intention be manifest that the donee shall not have the sole beneficial interest in the property.

[7.] *Held*, that in an action by C against B, for this fund, after the death of A, a count charging that B was indebted to C, in so much money received from A, for the use of C, was sufficient to let in evidence the answer of B to a bill in Equity, filed by A against B, in which B sets forth the agreement before recited, and admits the fund in his hands; and farther, that it was not a good objection to the admissibility of B's answer, that the bill and decree in the case was not also put in evidence by C, the plaintiff in the action.

Assumpsit, in Gwinnett Superior Court. Tried before Judge JAMES JACKSON, September Term, 1851.

This was an action brought by Rice B. Green and wife, to recover of Few Gordon the sum of five hundred dollars, held by him, under a parol gift of Mrs. Sarah Hardin, now deceased, to be used by him during the life of the donor, then to be paid to plaintiffs.

To prove their demand, the plaintiffs offered in evidence a sworn answer of the defendant to a bill in Chancery, which had been filed against him by Mrs. Hardin, in her life time, for the settlement of various transactions in which he, Gordon, had been the agent of the complainant. The answer was objected to, on the ground that it could not be evidence without the bill to which it was responsive and the decree thereon, which objection was overruled by the Court, and the evidence admitted.

The answer contained the following statement: that it was agreed between the defendant and Mrs. Hardin, the complainant, in consideration of certain specified services rendered by him, that he " should retain out of the first money he received on her account, the amount of one thousand dollars—five hundred of which was to be his then, and that the remaining five hundred

he was to retain and use as his own, but at her death was to pay over to the wife of the said Rice B. Green the amount of the five hundred dollars, without interest."

The Court charged the Jury, that the answer of the defendant to the bill showed that he took the $500 as a trustee for the wife of plaintiff, or if not so, that he took a life estate in the money, with remainder over to her, which remainder, although created by parol, was sufficient evidenee in writing by the answer, to make it good in Law.

The Jury found for plaintiffs, whereupon defendant moved for a new trial, on the ground of error in the admission of the answer as evidence, without the bill, and in the charge of the Court on the above stated points.

The motion for a new trial was overruled by the Court, to which defendant excepted.

DOUGHERTY, for plaintiff in error.

PEEPLES, for defendants.

*By the Court.*—NISBET, J. delivering the opinion.

This was an action of assumpsit, brought by Rice B. Green and his wife, Rebecca T. Green, against the plaintiff in error, Few Gordon. The declaration has two counts. The first avers, that the defendant was indebted to the plaintiff in the sum of five hundred dollars, "for so much money, by the said Few Gordon, before that time had and received, to and for the use of your petitioner, the said Rebecca T. at his special instance and request, of and from one Sarah Hardin, to be paid to the said Rebecca T. Green, by the said Few Gordon, and being so indebted, the said Few, in consideration," &c. The other is the usual count for so much money had and received for the use of the plaintiffs. To these counts was appended a bill of particulars, consisting of one item, to wit: five hundred dollars received from Sarah Hardin for Rebecca T. Green. Upon the trial, the plaintiffs, in support of their acition, tendered in evidence the answer of Few

Gordon, to a bill filed against him in Gwinnett Superior Court, by Sarah Hardin.  The defendant objected to the answer going in evidence, upon two grounds, hereafter stated, which were overruled.

The plaintiffs having introduced evidence to show that Sarah Hardin was dead, closed their case.  The defendant introducing no evidence, the cause went to the Jury, and he requested the Court to instruct them according to a number of propositions stated by his counsel.  The Court declining to charge as requested, a verdict was rendered for the plaintiffs, and a new trial asked by the defendant, upon the grounds substantially embraced in the instructions, which were declined.  The new trial was refused, and the defendant below, Few Gordon, excepted, assigning for error the rulings of the Court, and his refusal to rule, according to the instructions asked.

To understand the points made in the case, it is indispensable to state what is contained in the answer, for it will be seen that its admissibility depends upon the construction to be given to a parol agreement between Sarah Hardin and the plaintiff in error, Few Gordon, which it sets forth, and upon which agreement arose the points made on the trial by the plaintiff in error, in his requests for instructions, as also the points made in his rule for a new trial.  From the answer itself, then, it seems that it was filed to a bill brought by Sarah Hardin against the plaintiff in error, Few Gordon, for discovery, relief and account. It states that Sarah Hardin being interested as distributee, in the estate of her deceased brother, Martin Hardin, in August, 1840, made with the plaintiff in error, the following verbal agreement, to wit : " The said Sarah agreed with this defendant, that if he would undertake the management of her business, and the collection of her money, both from Fletcher and the estate of Martin Hardin, deceased, (she being too old and infirm to attend to it herself,) that she would allow him such commissions and charges as were usually allowed to trustees· or persons acting in like capacity, and that a deed of gift which she had made in August, 1838, giving to the wife of this defendant, and to the wife of Rice B. Green, five hundred dollars each, to take effect at her

death, should take effect immediately, so far as to authorize this defendant to retain, out of the first money he received on her account, the amount of one thousand dollars—five hundred dollars of which was to be his then, by virtue of the deed of gift aforesaid, in right of his wife, and that the remaining five hundred he was to retain and use as his own, but at her death was to pay over to the wife of the said Rice B. Green, the amount of the five hundred dollars, without interest;" that in accordance with this agreement, Sarah Hardin executed and delivered to him a power of attorney, and he proceeded to comply with it, and collected, immediately, from the administrator of Martin Hardin, eight hundred and twenty dollars, in current funds, and one hundred and eighty dollars in uncurrent money, in his hands for distribution; that he gave to Sarah Hardin immediate notice of these collections, and *she authorized him to retain and use the current money,* ($820,) *as had been stipulated between them in referference to the deed of gift.* Few Gordon's answer farther states, that in 1842, Sarah Hardin revoked his power of attorney, giving him notice of the revocation; that afterwards, in February, 1843, she sent for the defendant, Gordon, and requested him again to undertake the management of her affairs; stating to him that he had *already received the greater part of the money contemplated by the deed of gift, and that he could retain the balance, and his commissions and charges as fast as the money came into his hands,* which he consented to do, and she executed and delivered to him accordingly another power of attorney. It farther admits the receipt, under this last power of attorney, on her account, of some $1324. It exhibits an account at large of receipts and disbursements, as attorney for Sarah Hardin, embracing pretty large amounts, and claims that he shall be credited with the amount of $1000, which, by the agreement, he was to retain for himself and the wife of Rice B. Green. Such are the admissions of the answer, which I consider material to be stated to a fair understanding of the questions made in the assignment.

Now, this answer was tendered by the plaintiffs below, to sustain their count charging that the defendant was indebted to

them $500, for money received for their use from Sarah Hardin. To the admission of which the learned counsel for the plaintiff in error objected on the trial, insisting there and before this Court—

1st. That whilst it is not denied that, generally, the admissions of a defendant in Equity are good evidence against him in a Court of Law, yet that in this case the usual rule cannot obtain, inasmuch as the question, whether this answer contains any admissions that the plaintiff in error had received from Sarah Hardin money for the use of the defendants in error, depends upon a construction which the Court must place upon the parol agreement, which it discloses between the plaintiff in error and Sarah Hardin; that in order to let it in, it was necessary to give the plaintiff in error notice of the ground of action, by plainly and distinctly setting forth the agreement, in the declaration, and that the defendants in error not having done so, the answer ought to have been excluded.

2d. That the answer was inadmissible without the bill to which it was responsive, because the bill was indispensable to a correct understanding of the answer.

The counsel repeating in argument the positions taken in his request to the presiding Judge, and in his rule for a new trial, claims that the answer contains no admission that the plaintiff in error had received money to the use of the defendants in error, because, in legal effect, the parol agreement which it discloses is a nullity, and passed no estate or property of any kind to the defendants in error. And in support of this ground, he contends—

1st. That by the answer, the plaintiff in error, Gordon, has not admitted a promise to pay the defendants in error any thing, and if any promise be implied, it is without consideration, so far as they are concerned, and therefore void.

2d. That the parol agreement that the deed of gift should take effect immediately, was, so far as the defendants in error are concerned in it, a mere gratuity; that it was never perfected by delivery, and therefore revocable; that the answer shows

that Sarah Hardin had filed a bill to recover this money, and that that was a revocation.

3d. That the parol agreement disclosed by the answer, cannot support an implied promise by the plaintiff in error, to pay to the defendants the five hundred dollars, because it created an estate in remainder to them, and being in parol, it is void.

4th. That no interest whatever vested in the defendants in error, under the parol agreement, because the gift was of no specific property, but of money generally, which was not then in possession of either the donor or the plaintiff in error, Gordon. It could, therefore, be construed only as a promise to give, and if binding, was binding on the donor, Sarah Hardin, and not on the plaintiff in error, Gordon.

5th. That if the $500 be considered as a gift or gratuity, then it was void for want of delivery, and Sarah Hardin's representatives can recover it of the plaintiff in error; and if it is sought to be sustained by the consideration that the plaintiff in error was to attend to her business, then the consideration has failed, for he did not do so.

6th. That if the plaintiffs below seek to recover upon the ground that the defendant below had received and retained in his hands the $500, then the proof does not sustain the fact, for the answer does not show that the bill had been tried, and the plaintiff in error decreed to retain it.

These positions of counsel embraced all the points of error involved in this cause. Without considering them in the order in which they were taken, I shall proceed at once to present the construction which this Court puts upon the agreement set forth in the answer of Mr. Gordon; because, in our judgment, every question made by the record, must be ruled by that construction.

[1.] The main reliance for the plaintiff in error seemed to be upon the fourth position, to wit: that the agreement is to be construed as creating an estate for the life of Miss Hardin in him, with a limitation over in remainder to Mrs. Green. If a remainder, then, being created by parol, proceeds the argument, it is void, and Mrs. Green takes nothing, and the answer is inadmis-

sible. Whether it is to be 'construed as creating a remainder, or as evidence of a direct gift to Gordon of $500, in trust for Mrs. Green, is, I confess, somewhat doubtful. We think the latter, and so argues the counsel for the defendants in error, (Mr. *Peeples,*) and so the presiding Judge held. Whether, however, it is construed so as to make the one or the other, our judgment is the same, and that is, that there was no error in admitting the answer, or in overruling the motion for a new trial. If it be a limitation in remainder, then we hold that Gordon, after the termination of the life estate, held the money as trustee for the remainder-man, and that he *declared the trust in his answer.* Whilst a remainder cannot be created in personalty by parol, yet a trust in remainder, by parol, may be proven or manifested in writing, and will then be good. This is true as to a trust of lands, under the 7th section of the Statute of Frauds. Of course, then, it is true as to a trust in personalty, which is not embraced in that section. If the declaration clearly and with certainty, in writing, sets forth the objects and nature of the trust, and is made by the party legally entitled to make it, it will be sufficient, no matter what be the character of the document which contains it. Accordingly a bond to assign, as *cestui que trust* shall direct, or a covenant to convey to specified uses, recitals in a deed, statements in a bill or answer, or in letters or notes in the hand writing of the party, have been held sufficient. 2 *P. Williams,* 314. 2 *Vern.* 167. 2 *Bro. P. C.* 250. 2 *P. Williams,* 412. 1 *Com. & Law,* 15. 2 *Vern.* 288. 3 *Sim.* 385. 7 *Bro. P. C.* 227. 3 *Vesey,* 707. 2 *N. C. C.* 67. , *Hill on Trustees,* 61. *Kirkpatrick vs. Davidson,* 2 *Kelly,* 297.

[2.] The answer of the trustee, filed to a bill in Chancery, written out and recorded, discloses very distinctly the object and nature of the transaction, in this case, and we hold it sufficient. These things being so, in legal effect, the facts stated in the answer, admit in the hands of the plaintiff in error, a sum of money which belongs to the defendants in error, and it was properly admitted to charge him.

[3.] The most satisfactory view, however, of the legal effect of the agreement between Miss Sarah Hardin and the plaintiff in

error, is, that it is a gift of $500 to him, in trust for Mrs. Green, to be paid to her without interest, at the death of Miss Hardin. In giving to it a construction, it is not necessary to complicate the question, by connecting with it the gift of $500 to Gordon. That was not a *voluntary* gift, but is in consideration of services to be rendered by him for Miss Hardin, the donor. The 'stipulation is, that if he will assume the management of her affairs, she will allow him commissions, and that the deed of gift to him and Mrs. Green shall take effect immediately, so far as to authorize him to retain from the first moneys collected, the sum of $1000—five hundred of which is to be his then, (that is, when collected,) and the other $500 he is to use as his own until his death. The gift to him is of *$500*, absolutely, and the use of $500 during her life. The deed of gift referred to was not in evidence, and we have nothing to do with it; and I dismiss the gift of $500 to Gordon, with the remark, that it may be regarded as a consideration moving Gordon to accept the trust in behalf of Mrs. Green. Miss Hardin allows Gordon, who she has constituted her collecting agent, to retain $1000 of her money, when collected, and says to him, $500 of that sum you are to use as your own, but at my death you are to pay over to the wife of Rice B. Green the amount of this $500, without interest. I cannot regard these directions to Gordon in any other light than as a gift of $500 to him, for the use of Mrs. Green, to be paid at her death, without interest. The gift of the use of $500 to him, is a distinct matter. He is the donee, in his own right, of *the use* of the fund ; that is, of the interest on it for the donor's life, and is the donee of the principal for the use of Mrs. Green. Gordon is thus made a trustee of the principal ; that is, of $500 for Mrs. Green, from the beginning, in that he had not the absolute property, at any time, and when Miss Hardin died, the right to the $500 vested absolutely in Mrs. Green. *It was a voluntary trust of $500, without accountability for interest, to be paid by the trustee at a future day.*

[4.] The gift took effect when the money was collected, and the enjoyment was postponed for a term. Now, is there in Law, any valid objection to this trust? If none, Miss Hardin being

dead, Gordon, upon his own admission in the answer that he now holds in his hands this $500, is bound to pay it over to Mrs. Green, his *cestui que trust*.

[5.] It was created *by parol*, but this Court has determined that a trust of personalty may not only be created, but proven, by parol. Such we now hold to be the law. *Kirkpatrick vs. Davidson*, 2 *Kelly*, 297.

[6.] It is not a valid objection, by any means, that the donor has not, in form of words, created a trust. There is no magic in particular words. Any expressions manifesting an intention that the donee is not to have the beneficial enjoyment of the whole or of some part of the property, will be binding on the conscience of the trustee, and create a trust. 10 *Vesey*, 537. 1 *V. & B.* 273. 9 *Sim.* 503. 1 *Han.* 445. *Hill on Trustees*, 65.

[7.] In this case the interest of Gordon in this $500, is very clearly only the use for a term, whilst the absolute ownership in that sum is plainly given to Mrs. Green, at the end of the term. Nor is it a void trust because the subject matter is money—for all property, not only that which may be transferred, but choses in action, and mere naked powers and authorities may be made the subject matter of a trust. 1 *Cruise's Dig. tit.* 12, *ch.* 1. 2 *P. Williams*, 191. 1 *Vesey, Sen.* 411. *Hill on Trustess*, 44. A settler may make his own obligations to pay money, a trust fund. *Hill on Trustees*, 446. It is objected by counsel, that if from the admissions in the answer, a promise be implied from Gordon to the defendants in error, to pay them $500, yet so far as they are concerned, it was without consideration. No consideration from them is necessary. They are the beneficiaries of Miss Hardin. Once concede that Gordon was their trustee, and upon the death of Miss Hardin, by virtue of his obligations as such, he is liable to them. His conscience is charged, in Equity, with the payment of their money, and *ex equo et bono*, he is liable at Law. He, by the statements in the answer, accepted the trust, and received the money, according to the agreement. He admits the money in hand, and the proof is that Miss Hardin is dead. It is not discoverable upon what legal

grounds he asks for a consideration moving from his *cestui que trust* to him.

We are told that the agreement that Gordon should retain the $500 for Mrs. Green, was a mere gratuity, and not being perfected by delivery, was revocable, and was, in fact, revoked by the bill filed by Miss Hardin against Gordon, for relief and account. A mere promise to give, passes no interest, and a gift of personal property by parol, without delivery, is revocable. This is the general rule, and it is claimed to be the same, whether the gift be direct or in trust. *Donatio perficitur possessione accipientis.* Where there is a voluntary conveyance in trust, which passes the legal estate to the trustees, the title is complete and irrevocable, and will hold good against the grantor, and all volunteers claiming under him by devise or otherwise—it is good even against purchasers in case of personalty, for the Statute 27 *Elizabeth*, does not apply to personal estate. 3 *Swan.* 414. *Ib.* 411, *n.* 1 *Cr. & Ph.* 138. 2 *N. C. C.* 345. 3 *M. & K.* 36. 2 *M. & K.* 503 *to* 512. *Hill on Trustees*, 82, 83. The question, then, here is, was this gift in trust executed so as to clothe the trustee, Gordon, with the legal title? The distinctions between voluntary trusts, executed and executory, are exceedingly nice. I need not go into them; for according to the facts of this case, the title in the trustee was perfected by possession of the money before there was any pretence of revocation—after that it was irrevocable. The agreement was, that this $500 was to be retained out of the first money collected for Mrs. Hardin by Gordon, the trustee. In 1840, the same year that he took her agency, he did collect upwards of $800. We hold that, *eo instanti* in which he collected $500, the title to it vested, and the promise was irrevocable. His collection was delivery. The gift was perfected by his reception of the possession. Had there been a revocation before that time, a new phase would have been given to the case. Farther, when this $800 was collected, Gordon gave to Miss Hardin notice of that fact, and then she affirmed the trust, or if you please, declared it *de novo*, *by authorizing him to retain that sum, as had been stipulated between them in reference to the deed of gift*—that is, according to the agreement

first entered into. Here there was an actual appropriation of a sum in the hands of the trustee, to the trust, which not only rebuts all idea of a revocation, but of itself perfects the title, by passing the possession. Subsequently, in 1842, Gordon's power of attorney was revoked, and it was renewed in 1843. When renewed, Miss Hardin again affirmed this trust, by stating to him, that he had *already received* the greater part of the money contemplated by the deed of gift, and that he could *retain the balance as fast as it came to his hands.* After this, he received for her some $1300; so that we cannot doubt but that the gift was consummated by possession of the money, and was irrevocable. Indeed, at no time before Miss Hardin's death, does it appear to us, that there was any attempt to revoke this trust. We cannot consider the filing of the bill against Gordon as a revocation. That bill had quite object enough, without ascribing to it a purpose to call back this gift to Mrs. Green. From the answer, it seems that Miss Hardin sought of him an account of all his transactions as her agent, involving other large sums of money. But if it was intended as a revocation, it was too late, for the trust, as stated, had become executed, and it was then irrevocable. It is not revocable by Sarah Hardin's representatives. The trust was binding upon her, and it is binding upon them, and there is, therefore, no foundation for the idea that they can recover the money from the plaintiff in error. According then to the most stringent rule, the parol agreement between the plaintiff in error and Miss Hardin, and the facts developed in the answer, make out a valid trust. I am not, however, prepared to say, that a valid trust may not be declared without actually divesting the party of the legal estate. If there is a clear direction or declaration by a party, that the property shall be held in trust for the objects of his bounty, although unaccompanied by a deed or other act divesting himself of the legal estate, it is an executed trust, and will be enforced against the party and his representatives. 18 *Vesey,* 140. 1 *Keene,* 551. 1 *Hare.* 458. *S. C.* 1 *Phil.* 153, '7. 4 *Beav.* 600. 5 *Beav.* 224. *Hill on Trustees,* 88, '9.

In this case it is not to be questioned but that Miss Hardin

VOL X 69

gave very clear directions that Gordon should hold this sum of $500 for the use of Mrs. Green, the object of her bounty.   Upon any view of this cause, we think that the answer of Gordon was well admitted, supporting the declaration in its general averment, that the defendant below was indebted to the plaintiffs below in the sum of $500, received from Sarah Hardin, for their use, and that upon that answer, and proof of the death of Miss Hardin, they are entitled to recover.   How the plaintiffs below got in evidence, under their declaration, not having averred the fact of her death, I do not very well see, but no question as to *that* is made in this record.   It is manifest, from what has been said of the legal effect of the parol agreement, that it was not necessary to put in evidence the bill.   According to that legal effect, the $500 belonged to Mrs. Green, and the answer admits it to be in the hands of the plaintiff in error.   The bill could not change the construction of the agreement.   If there was a decree in favor of Miss Hardin on the bill for this money, it was incumbent on the plaintiff in error to have shown it in evidence, or protected himself by bill of interpleader.

Let the judgment be affirmed.